UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 18-24218-CIV-GAYLES

ROSS MANDELL,

    Plaintiff,

v.

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION; FEDERAL
BUREAU OF INVESTIGATION; and
UNITED STATES DEPARTMENT OF JUSTICE,

    Defendants.
_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO U.S. MAGISTRATE OTAZO-REYES' REPORT AND RECOMMENDATION REGARDING DEFENDANT'S SUMMARY JUDGMENT

Defendant, United States Department of Justice ("DOJ" or "Defendant"), hereby responds to Plaintiff's Objection (ECF No. 55) to the Honorable United States Magistrate Judge Otazo-Reyes' Report and Recommendation (ECF No. 54) regarding Defendant's Motion for Summary Judgment.

## BACKGROUND AND INTRODUCTION

On December 14, 2010, the Office of United States Attorney for the Southern District of New York filed a Superseding Indictment against Ross Mandell and five others. *See* Superseding Indictment dated December 14, 2010, *United States v. Mandell*, et. al, 1 :09-cr-00662 (PAC)(SDNY). The Indictment charged that, between 1998 and 2006, Mandell participated in a securities fraud scheme through corporate entities he had founded and controlled. *Id*. at ¶ 16. Specifically, the indictment alleged that Mandell and others solicited millions of dollars from investors under false pretenses, and did not use the funds as promised. *Id*. Mandell and others raised a total of approximately $140 million from investors through their fraudulent scheme. *Id*., at ¶19. Mandell and his co-defendants used those funds to enrich themselves, pay undisclosed commissions to brokers, and pay off earlier investors who had lost funds on prior purported investment opportunities. *Id*., at ¶17.

On July 26, 2011, the jury in *United States v. Mandell* found Mandell guilty of conspiracy to commit securities fraud, wire fraud and mail fraud; securities fraud; wire fraud; and mail fraud. *See* Verdict Sheet dated July 26, 2011, *United States v. Mandell*, et. al, 1 :09-cr-00662 (PAC)(SDNY). On May 3, 2012, the Court sentenced Mandell to 144 months of incarceration and three years of supervised release, and ordered him to pay a $10,000 fine. *See* Judgment dated May 7, 2012, *United States v. Mandell*, et. al, 1 :09-cr-00662 (P AC)(SDNY). In addition, the Court ordered Mandell to forfeit $50 million. *See* Forfeiture Order dated May 7, 2012, *United States v. Mandell*, et. al, 1 :09-cr00662 (PAC)(SDNY). Finally, on September 26, 2012, the Court ordered Mandell and his co-defendants to pay $24,880,460 in restitution to his fraud victims. *See* Restitution Order September 26, 2012, *United States v. Mandell*, et. al, 1:09-cr00662 (PAC)(SDNY).

On February 11, 2016, Mandell filed a Habeas Petition under 28 U.S.C. § 2255, for reversal of his conviction and vacation of his sentence. *See Mandell v. United States*, Case No. 16 Civ. 1186, 2017 WL 2256652, *3 (S.D.N.Y. May 23, 2017). Mandell argued that his Sixth Amendment right to conflict-free counsel was violated because his trial attorney, Jeffrey Hoffman, had a conflict of interest because of Hoffman's relationship with Steven Altman. *See* Opinion & Order on Mandell's § 2255 Petition*, Mandell v. United States*, 2017 WL 2256652, *1 (S.D.N.Y. May 23, 2017).  Altman was an uncharged participant in Mandell's criminal scheme and a close friend of Mandell. *See* Opinion & Order on Mandell's § 2255 Petition, *Mandell v. United States*, 2017 WL 2256652, *3 (S.D.N.Y. May 23, 2017). Although Altman claims in this case that Altman was also his personal attorney in the years preceding his criminal prosecution Compl. (ECF No. 1) at ¶ 8, Mandell made no such claim in the course of his habeas proceedings.

Altman did not testify at Mandell's trial, but his role was discussed throughout the trial. *Id*. 14.  Mandell asserted in his habeas petition that while Hoffman was representing Mandell, Hoffman and Altman had a very close relationship: Altman referred at least two high-paying clients to Hoffman, including Mandell; Hoffman and Altman shared office space; and Hoffman and Altman had a father/son relationship. Mandell also asserted that he learned after trial that Hoffman had been simultaneously representing Altman in connection with a Securities and Exchange Commission proceeding. *Id*. at *3.  15.   Mandell argued that Hoffman "should have allowed Mandell to testify at trial and meet with the government, proffer, cooperate, or plead guilty; [that] Hoffman should have called Altman and others as witnesses; and [that] Hoffman

should have more vigorously cross-examined government witnesses about Altman's role in the scheme." *Id.* at *4. On May 23, 2017, the Court presiding over Mandell's § 2255 Petition rejected Mandell's Sixth Amendment claims and denied the habeas petition accordingly. *See Id.*

On October 12, 2018, Plaintiff filed this action against the Securities and Exchange Commission, the Federal Bureau of Investigation and the DOJ under the Freedom of Information Act, 5 U.S.C. § 552. *See* Complaint, (DE 1). The lawsuit originally sought an order compelling each of the three Defendant federal agencies to produce records in response to Mandell's requests for records regarding Steven Altman and Mandell's criminal defense attorney, Jeffrey Hoffman. Mandell later abandoned his claims against the SEC and the FBI, and his request for records concerning Hoffman. *See* DE No. 33, n.1. Further, Mandell has limited the scope of his FOIA request to files regarding Steven Altman that pertain or relate to Mandell's criminal case. *Id.* Consequently, Mandell now challenges only the lawfulness of DOJ's response to his FOIA request for records regarding Altman that pertain to Mandell's criminal prosecution.

Mandell's FOIA request sought "copies of any and all files regarding . . . Steven Altman," including "all investigations, interviews, testimony, transcripts, evidence, cooperation agreements, in the actual or constructive possession of the United States Attorneys [sic] Offices. . ." *See* Compl. Ex. A. DOJ's Executive Office for United States Attorneys ("EOUSA") denied Plaintiff's FOIA request for records concerning Altman in the possession of the U.S. Attorney's Office for the Southern District of New York. *See* Declaration of Vinay J. Jolly (Exhibit B to Defendant's Motion For Summary Judgment (ECF No. 27-2) at ¶ 6). By letter dated November 6, 2018, EOUSA advised Plaintiff that "the files of the third parties could not be released absent express authorization and consent from the named third parties (Steven Altman and Jeffrey Hoffman), proof that the third parties were deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest of the third parties." Id. at ¶ 6. EOUSA advised Plaintiff that the release of any such responsive material without an authorization would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act and generally exempt under FOIA. *Id*. at ¶ 7. Accordingly, EOUSA denied Plaintiff's request pursuant to 5 U.S.C. §§ 552(b)(6) and (b)(7)(C), and the Privacy Act, 5 U.S.C. § 552a(b).

Mandell has alleged in this action that Altman was a cooperating Government witness in the criminal case against him. Compl. (DE 1) at ¶ 12. Under penalty of perjury, Mandell has

declared that "at the start of the criminal trial against [him], the government identified Steven Altman as a witness who would testify against [him]." Declaration of Ross Mandell (DE 34-1). In reality, the government never indicated that it would call Mr. Altman as a witness in Mandell's criminal trial. *See* Transcripts of Proceedings in *United States v. Mandell*, et al., 09 Cr. 662 (PAC). Nor did Mr. Altman cooperate in the government's investigation or prosecution of Mandell. *See* Declarations of Katherine Goldstein and Kurt Dengler, attached as Exhibits "A" and "B," respectively, to Defendant's Amended Statement of Facts (ECF No. 49). Simply stated, the United States neither sought nor obtained Altman's cooperation in the case and never intended to call him as a witness. *See id.*

Aside from his misrepresentations and speculation, Mandell offers absolutely no support for his claim that the government improperly received cooperation from Altman. The document Mandell attached to his Declaration in this case (DE 34-1), which he swore is a "true and correct copy of the [government's] witness list from [the] criminal trial," is no such thing and Mandell knows it. He edited the document to make it look like a witness list, when in fact it was part of list of names and entities provided to the criminal trial court for use in *voir dire*, to identify any potentially conflicted jurors.

Notwithstanding the undisputed evidence that the government received no cooperation from Altman and did not intend to use him as a witness, Mandell argues that "a reasonable person would be justified in concluding that the government 'might' have improperly used Altman" because Altman was Mandell's lawyer *and* an unindicted co-conspirator. Such speculation, however, fails to satisfy Mandell's burden of showing that disclosure of the records he is requesting (all records regarding Steven Altman that pertain or relate to Mandell's criminal case) advances a public interest more important than Altman's right to privacy.

This Court referred the parties' Motions for Summary Judgment to the Honorable U.S. Magistrate Judge Alicia M. Otazo-Reyes for report and recommendation. After carefully considering the parties' cross motions for summary judgment, presiding over two hearings and receiving supplemental briefing, Magistrate Judge Otazo Reyes entered the Report and Recommendation (E.C.F. No. 54) now at issue. Judge Otazo-Reyes's R & R carefully reported the undisputed material facts and recommended that the government's Motion for Summary Judgment be granted, and Plaintiff's denied. Judge Otazo-Reyes first concluded that Mandell had failed to establish as an undisputed fact that Altman was his personal lawyer, and that, even if

Mandell *had* established that Altman was his personal lawyer, he failed to provide any authority for his argument that Altman had no protectable right to privacy under FOIA. *Id*. at 16.

Judge Otazo-Reyes next rejected Mandell's arguments based upon the D.C. Circuit's decision in *Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) ("*CREW*").  Mandell had argued that, under *CREW*, disclosure of the records he seeks is appropriate because it would shed light on how "how DOJ has handled a criminal defendant's own prior attorney in the course of an investigation and prosecution."  Judeg Otazo Reyes correctly found, however, that even assuming that Altman was Mandell's lawyer, Mandell had failed to establish that any DOJ substantive law enforcement policy was at issue in this case. *Id*. at 18. Judge Otazo Reyes observed that, "Mandell ha[d] failed to establish as undisputed facts either that a subpoena was issued to Altman for information relating to his purported representation of Mandell or that Altman was listed as a potential witness at Mandell's trial." *Id*.

Finally, Judge Otazo-Reyes rejected Plaintiff's argument that disclosure is appropriate because a reasonable person would be justified in concluding that the government "might" have improperly used Altman in its prosecution of Mandell because Altman was Mandell's alleged lawyer and an unindicted co-conspirator.  Judge Otazo-Reyes correctly found that "facts that the government did not prosecute Altman and did not explain its decision are insufficient to support anything beyond Mandell's "bare suspicion" of government misconduct." *Id*. at 19.

Magistrtate Judge Otazo-Reyes's Report and Recommendation is correct in its assessment of the facts and its application of the law.  Nevertheless, Mandell objects to the Report and Recommendation because (1), in his view, it was undisputed that Altman was his personal lawyer; (2) the records he seeks bear on substantive law enforcement policy; and (3) a reasonable person could conclude that the government "might" have improperly used information obtained from Altman against him.  These are precisely the same arguments Plaintiff made to Judge Otazo-Reyes and which the Judge correctly rejected.  First, Judge Otazo-Reyes' ultimate conclusions did not depend on her finding that Mandell had failed establish as an undisputed fact that Altman was his lawyer. Second, Judge Otazo Reyes properly credited the government's undisputed evidence that it never sought or obtained Altman's cooperation and, therefore, the Judge properly found that Mandell had failed to identify a substantive law enforcement policy as discussed in CREW.  Finally, Judge Otazo-Reyes was absolutely correct in calling out Plaintiff's accusation of government misconduct as bare speculation.  For these

reasons, which are explained in greater detail below, this Court should overrule Mandell's objection, adopt the Report and Recommendation, and grant summary judgment in favor of the government.

## ARGUMENT

As explained in its original Motion for Summary Judgment (ECF No. 27), DOJ is entitled to summary judgment in this case because it properly invoked FOIA Exemptions (b)(6) and (b)(7)(C) to deny Mandell's requests for records concerning Steven Altman.

### I.     DOJ Properly Invoked FOIA's Privacy Exemptions (b)(6) and (b)(7)(C).

DOJ denied Plaintiff's requests for records concerning Steven Altman on the basis of FOIA Exemptions (b)(6) and (b)(7).  FOIA Exemption (b)(6) exempts from disclosure matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has given the term "similar files" a broad meaning; all information which "applies to a particular individual" may fall within FOIA Exemption 6. *U.S. Dept. of State v. Washington Post Co.*, 456 U.S. 595, 599-603 (1982). FOIA Exemption (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information...could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

The applicability of Exemptions (b)(6) and (b)(7)(C) is determined by a balancing of interests which are the same under both exemptions. *See Office of the Capital Collateral Counsel*, 331 F.3d at 803 n. 5, citing *U.S. Dept. of Defense v. F.L.R.A.*, 510 U.S. 487, 496 n.6 (1994). Individual privacy interests must be weighed against the public interest, if any, in disclosure of the information requested in order to determine whether a particular disclosure "would constitute a clearly unwarranted invasion of personal privacy" under Exemption (b)(6) or whether the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy" under Exemption (b)(7)(C). *See U.S. Dept. of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 762 (1989); *L & C Marine Transport, Ltd. v. United States*, 740 F.2d 919, 922-23 (11th Cir. 1984); *Office of the Capital Collateral Counsel*, 331 F.3d at 802; *U.S. Dept. of Defense v. F.L.R.A.*, 510 U.S. at 495; *Bibles v. Oregon Natural Desert Ass'n*, 519 U.S. 355 (1997).

The Supreme Court has recognized that FOIA's exemptions were intended to afford

broad protection against the government's release of information about individual citizens, and the Court has broadly defined the privacy interest protected by these exemptions. *See Reporters Committee*, 489 U.S. at 763-64. The privacy interest under FOIA extends beyond the common law and the Constitution. *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 170 (2003). It accords individuals the right "'to determine for themselves when, how, and to what extent information about them is communicated to others.'" *Reporter Committee*, 489 U.S. at 764, n.16 (citation omitted, emphasis added); *see also Office of the Capital Collateral Counsel*, 331 F.3d at 802 ("The privacy interest protected by Exemption 6 includes an individual's interest in avoiding disclosure of personal matters."); *L & C Marine Transport, L.T.D. v. United States*, 740 F.2d at 923.[1]

Particularly, courts have recognized that there is a substantial privacy interest in information regarding individuals contained in law enforcement investigative records, including information not just about the subjects of investigation but also agents and employees, victims, third parties and confidential sources, the disclosure of which might subject these individuals or their families to embarrassment, harassment, or reprisal.[2] *See Cappabianca v. Commissioner, U.S. Customs Service*, 847 F. Supp. 1558, 1564-66 (M.D. Fla. 1994); *L & C Marine*, 740 F.2d at 923; *Cleary v. F.B.I.*, 811 F.2d 421, 424 (8th Cir. 1987); *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 767 (D.C. Cir. 1990). Thus, the protection afforded under Exemption (b)(7)(C), which pertains to law enforcement records and information, is even broader than that afforded under Exemption (b)(6). *Favish*, 541 U.S. at 165-66; *Office of Capital Collateral Counsel*, 331 F.3d at 803 n. 6.

While the privacy interest protected under FOIA has been broadly defined, the public interest which is weighed against it is strictly limited to the public's interest in being informed

---

[1] The protected privacy interest is so broad that, under some circumstances, even information about an individual which is, or has been, in the public record is protected. In *Reporters Committee* the Supreme Court held that there was a substantial privacy interest in personal information such as is contained in "rap sheets" even though the information had been made available to the general public at some place and point in time. *Reporters Committee*, 489 U.S. 749; *see also L&C Marine*, 740 F.2d at 922.

[2] It should be noted that any assessment of the extent of the privacy invasion must consider the ramifications of release not just to the requester but to the public at large, since any member of the public "must have the same access under FOIA as the [requester]" to the information sought in a given case. *U.S. Dept. of Defense v. F.L.R.A.*, 510 U.S. at 501; *see also Favish*, 541 U.S. at 174 ("once there is disclosure, the information belongs to the general public").

about "what their government is up to." *Reporters Committee*, 489 U.S. at 772-75. Disclosure is in the public interest only to the extent that it would "contribute significantly to public understanding of the operations or activities of the government." *Reporters Committee*, 489 U.S. at 775 (emphasis added); *see also Office of the Capital Collateral Counsel*, 331 F.3d at 803. The public interest is not furthered by "disclosure of information about private citizens...that reveals little or nothing about an agency's own conduct." *Reporters Committee*, 489 U.S. at 773.

Whether or not the public interest will be furthered by disclosure of requested information is not determined by asking whether there is "general public interest in the subject matter of the FOIA request" but, rather, by examining "the incremental value of the specific information being withheld" for shedding light on agency action. *Schrecker v. Department of Justice*, 349 F.3d 657, 661, (D.C. Cir. 2003). It is the requester's burden to show both that the public interest which he is seeking to advance is "significant" and "more specific than having the information for its own sake" and that the information he is requesting "is likely to advance that interest." *Favish*, 541 U.S. at 172 (emphasis added).

DOJ properly applied the foregoing principals of FOIA Exemptions (b)(6) and (b)(7)(C) to deny Plaintiff's FOIA request for records concerning Altman within the files of the U.S. Attorney's Office for the Southern District of New York.  Recognizing the privacy interests of the individual subject to Plaintiff's request, Steven Altman, DOJ observed that

> [i]t is well-recognized that individuals have a strong privacy interest in law enforcement records and that the mention of an individual's name and identifying information in connection with a law enforcement will engender comment and speculation, and carries a stigmatizing connotation. Moreover, the fact that an event is not completely private does not mean that an individual has no interest in limiting disclosure or dissemination of the information. Likewise, an individual mentioned in law enforcement records does not lose all rights to privacy merely because his or her name has been disclosed.

 Declaration of Vinay J. Jolly (Defendant's Mot. for Summary Judg. Exh. B (ECF No. 27-2) at ¶ 9.

DOJ concluded that "Plaintiff [had] failed to meet [his] burden of establishing that there is any public interest in disclosure that outweigh the strong privacy interests of Mr. Altman and Mr. Hoffman." *Id*. at ¶ 11.  Mr. Jolly's Declaration on behalf of the DOJ provides an adequate factual basis for the denial of Plaintiff's FOIA request  for records regarding Steven Altman. Accordingly, because DOJ has justified its denial of Plaintiff's FOIA request on the basis of

FOIA's privacy exemptions, (b)(6) and (b)(7)(C), the agency is not improperly withholding records from Plaintiff, and is entitled to summary judgment in its favor.

### II. Plaintiff's Response to the DOJ's Motion for Summary Judgment Misconstrued DOJ's Response to his FOIA Request

Mandell's Response to the government's Motion for Summary Judgment incorrectly characterized DOJ's response to his FOIA request as a *Glomar* Response, which neither acknowledged nor denied the existence of any responsive records in the agency's possession.[3] In fact, DOJ did not issue a *Glomar* response. Instead, DOJ denied Plaintiff's request for records in the agency's possession concerning Altman pursuant to FOIA exemptions (b)(6) and (b)(7)(c). This was a significant error, as Mandell's response to the Motion for Summary Judgment cast "[t]he sole legal issue in this case [as] whether DOJ's *Glomar* response [was] legally justified." *See* DE 33, at 2.

At the August 15, 2019 hearing before Magistrate Judge Otazo-Reyes on the parties' Motions for Summary Judgment, Plaintiff acknowledged his error concerning the nature of EOUSA's response to his FOIA request. Plaintiff argued, however, as he would again in his Post-Hearing Brief and then again in his Objection to Magistrate Judge Otazo Reyes' Report and Recommendation that, (1) as Mandell's attorney, Steven Altman has no right to privacy; (2) there is a public interest in the manner in which the DOJ carries out substantive law enforcement policy that outweighs any right to privacy enjoyed by Altman; and (3) that the possibility that the DOJ "might" have engaged in wrongdoing by obtaining privileged information from Altman warrants disclosure of any responsive records in the agency's possession. *See* Plaintiff's Post Hearing Brief (ECF No. 40) and Objection to Report and Recommendation (ECF No. 55). As explained below, all of these arguments are based on Mandell's misrepresentations about the government's conduct in his criminal case. Regardless of Plaintiff's misrepresentations, none of his arguments concerning the lawfulness of DOJ's FOIA response has any merit.

---

[3] The phrase "*Glomar* response" stems from a case in which a FOIA requester sought information concerning a ship named the "Hughes Glomar Explorer," and the CIA refused to confirm or deny the existence of records in its possession regarding the Glomar vessel because to do so would compromise the national security or divulge intelligence sources and methods. *Phillipi v. CIA*, 655 F 2d. 1325 (D.C. Cir. 1981). *Glomar* responses are proper "if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. C.I.A.*, 473 F.3d 370, 374 (D.C. Cir. 2007).

### III. Plaintiff Has Misrepresented the Government's Conduct in His Criminal Case

In this FOIA action, Mandell has blatantly misrepresented – under penalty of perjury – that "at the start of the criminal trial against [him], the government identified Steven Altman as a witness who would testify against [him]." Declaration of Ross Mandell (DE 34-1). In fact, the government at no time indicated that it intended to call Mr. Altman as a witness in the criminal case. *See* Transcripts of Proceedings in *United States v. Mandell*, et al., 09 Cr. 662 (PAC).

Mandell has further alleged in this action that Altman was a cooperating Government witness in the criminal case against him. Compl. (DE 1) at ¶ 12. In fact, Altman did not cooperate in the government's investigation or prosecution of Mandell. *See* Declarations of Katherine Goldstein and Kurt Dengler, attached as Exhibits "A" and "B," respectively, to Defendant's Amended Statement of Facts (ECF No. 49).

Katherine Goldstein was an Assistant U.S. Attorney representing the United States in the prosecution of Mandell in *United States v. Mandell, et al.*, 09 Cr. 662 (PAC) (S.D.N.Y.). *See* Goldstein Decl. (ECF No. 49-1). Ms. Goldstein declares that neither she, nor any person acting on the government's behalf, interviewed or proffered Steven Altman in the course of the government's investigation and prosecution of Mandell. *Id*. Ms. Goldstein further declares that the United States neither sought nor obtained Altman's cooperation in the prosecution of Mandell. *Id*. Finally, Ms. Goldstein declares that the United States never intended to call Altman as a witness in Mandell's trial and at no point indicated that it would do so. *Id*.

Kurt Dengler was the FBI Case Agent on the Sky Capital investigation that resulted in Mandell's criminal prosecution. *See* Dengler Decl. (ECF No. 49-2). Special Agent Dengler declares that neither he nor any person acting on the FBI's behalf interviewed Altman, and Altman did not otherwise provide information or cooperate in the FBI's investigation of Mandell and his co-defendants in the Sky Capital matter. *Id*.

Aside from his misrepresentations and self-serving speculation, Mandell offers absolutely no evidence supporting his claim that the government received cooperation from Altman and intended to call him as a witness at trial. The document Mandell attached to his Declaration in this case (DE 34-1), which he swears is a "true and correct copy of the [government's] witness list from [the] criminal trial," is no such thing. Mandell edited the document to make it look like a witness list. The document Mandell attached to his Declaration, titled simply, "Names,"

includes Steven Altman. *Id*. It is not, however, the government's witness list. It is a portion of a larger document the prosecution submitted to the criminal Court before Mandell's trial, providing a list "of names and entities to be asked about during jury selection." *See* DE 317 in *United States v. Mandell*, et al., 09 Cr. 662 (PAC) (S.D.N.Y.).

Mandell either knew or should have known that the document fragment he attached to his Declaration in this case was not the government's witness list, as he had attached the full document as an exhibit to his § 2255 Motion to Vacate his criminal sentence. *See* DE 317 in *United States v. Mandell*, et al., 09 Cr. 662 (PAC) (S.D.N.Y.). The full document describes exactly what it is: a list "of names and entities to be asked about during jury selection." *See* DE 317 in *United States v. Mandell*, et al., 09 Cr. 662 (PAC) (S.D.N.Y.). A copy of the complete document, as filed by Mandell with his § 2255 Motion, was attached as Exhibit B to the government's Response to Plaintiff's Post Hearing Brief (ECF No. 41-2). Nowhere does the document indicate that it is a list of the government's witnesses.

As Mandell's own Complaint (DE 1) acknowledges, it was the Judge presiding over his criminal trial who, during jury selection, read Altman's name to potential jurors. *See* Compl. (DE 1) at ¶ 9; and Transcript of Proceedings in *United States v. Mandell*, et al., 09 Cr. 662 (PAC) (S.D.N.Y., June 21, 2011) at p. 141-42 (emphasis added). The Judge did not identify Altman as a potential witness for the government, but as one of many "names of people you [the jurors] may hear in this case," for the purpose of identifying any potentially conflicted jurors:

```
 1      THE COURT: . . .
 3      Now, I'm going to list for you, read you from a list
 4   of potential witnesses in this case, or names of people you may
 5   hear in this case.  Names of corporate entities, ask you if you
 6   are familiar with any of them, or had any business dealings
 7   with them.  I'll read the list very slowly:
 8      Philip Akel, Guy Clemente, McKyle Clyburn, Robert
 9   Grabowski, Michael Passaro.  Arn Wilson.  Steven Shea, Edward
10   McMahon.  James Crimi.  Steven Altman.  Harris Kipperman.
11   Michael Recca.  Jason Muscari.  Mario Figueroa.  Cecilia
12   Mackie, Fran Duffy, Jeffrey Haddad, Jesse Barvo, Roy Martinez,
13   Darwin Martinez, Yaritza Bermudez.  Donna O'Moore, she works
14   for the London Stock Exchange.  Special Agent Kurt Dengler of
15   the FBI.  Special Agent Jessica Kruger of the FBI.  Have you
16   ever met Agent Roeser and Agent Munster.  David Ash.  John
17   Costelloe, Mark Halper.  Stuard Grassie.  James Hankins.
18   Adrian Howard.  Eitan Mizrahi.  Anthony O'Hanlon.  Richard
19   Stapen.  David Weaver.  Barry Whitehead.  Bart Delgado.  Alper
```

```
20   Cetingok.  Susan VanBerg, Seymour Reich.  C. Ben David.  Robert
21   Taylor, Kenneth Walker, Annie Yang.  Thomas McMillen.
22        And then here is some corporate entities:
23        Thornwater Company, also known as Thornwater.
24        Lanesborough Holdings.  St. James Holdings, Dorchester
25   holdings, Lisa Incredible Edibles.  Ticketplante.com,

1    Chipcards, SkyCapital, Sky Capital Holdings.  Sky Capital
2    Ventures also known as Sky Capital Enterprises.  Advanced
3    Spinal Technologies, and Globalsecure.
4         Anybody here have any of those names.
5         When I introduced Mr. Hoffman to you, he may be
6    assisted from time to time by the following lawyers:  Suzanne
7    Wolfe, Jesse Nichols, and Charlotte Bigellow.  They are not
8    here in Court this morning, but they may join Mr. Hoffman from
9    time to time.
10        Anybody know any of them?
11        First let me divide it into two questions.
12        Does anybody know anybody on the long list of names
13   and entities that I read?
14        All right.  Does anybody know any of Mr. Hoffman's
15   associates?
16        Do you, or any of you, know, have any association with
17   any member of the staff of the United States Attorney for the
18   Southern District of New York.
```

Transcript of Proceedings in *United States v. Mandell*, et al., 09 Cr. 662 (PAC) (S.D.N.Y., June 21, 2011) at p. 141-42 (emphasis added).

    The list of names read by the judge is identical, and in the same order, as the list of names Mandell has tried to pass off in this case as the government's witness list. *Compare* Mandell Decl. ECF No. 34-1 *and* Transcript of Proceedings in *United States v. Mandell*, et al., 09 Cr. 662 (PAC) (S.D.N.Y., June 21, 2011) at p. 141-42. Lest there be any doubt, the government's *actual* witness list from the criminal trial does *not* contain Steven Altman. *See* Declaration of Andrew Chan, Assistant U.S. Attorney for the Southern District of New York, attached to the government's Response to Plaintiff's Post Hearing Brief (ECF No. 41-1). [4]

    Notwithstanding the overwhelming evidence that the government, in fact, received no cooperation from Altman and did not intend to use Altman as a witness, Mandell argues that "a reasonable person would be justified in concluding that the government 'might' have improperly

---

[4] The government's witness list was not made part of the record of Mandell's criminal case.

used Altman" because Altman was Mandell's lawyer *and* an unindicted co-conspirator. Mandell, however, has failed to identify any additional facts from which one could conclude that the government had violated Plaintiff's attorney-client privilege or otherwise improperly obtained any information from Altman. As such, Plaintiff's suggestion of wrongdoing on the government's part is pure speculation, untethered to any facts from which one could reasonably infer government wrongdoing. Mandell's arguments are entirely dependent on his false representations of the government's conduct in the criminal proceedings. In view of the reality that the government did not receive cooperation from Altman or intend to call him as a witness in the criminal case, the propriety of DOJ's response to Plaintiff's FOIA request is beyond question. DOJ properly invoked FOIA Exemptions (b)(6) and (b)(7)(C) to deny Plaintiff's requests for records concerning Altman because there is neither a public interest in disclosure that outweighs Altman's privacy rights nor any evidence of government wrongdoing to justify the disclosure.

**IV.     Altman Maintains a Right to Privacy With Respect to the Records at Issue**

Mandell has argued that Altman served as his personal attorney and, therefore, has no right to privacy with regard to the records pertaining to Mandell's criminal prosecution. In essence, Mandell's argument is that a person's personal attorney waives his or her right to privacy as to any and all matters involving his client regardless of the nature, scope or timing of the attorney's representation. While it is true that an attorney does not have an interest in his identity remaining private if that attorney openly represents their client in a court proceeding (*see Gawker Media, LLC v. Federal Bureau of Investigation*, 145 F.Supp.3d 1100, 1110-11 (M.D. Fla. 2015)), Plaintiff provides no authority whatsoever for his bold assertion that an attorney waives his right to privacy with regard to *all* matters involving his client – even those unrelated to, or beyond the scope of, the attorney's representation of the client. Altman certainly was not Plaintiff's defense attorney in the underlying criminal case.[5] Aside from identifying him as his "personal attorney," Plaintiff provides no evidence of the nature, scope or timing of Altman's representation, or any explanation of why Altman's representation waived his right to privacy with regard to Mandell's criminal case. Plaintiff does not even allege that Altman's legal representation had anything to do with subject matter of the criminal case. Thus, even accepting

---

[5] Plaintiff was represented in the criminal case by Jeffrey Hoffman. *See* Compl. (DE 1) at ¶ 8.

as true that Altman served as Plaintiff's attorney in some capacity, Plaintiff has failed to show that Altman's service in that regard waived or even diminished his right to privacy with regard to the particular records requested in this case.[6]

### V. Plaintiff Fails to Demonstrate How Disclosure of the Requested Information Will Further a Public Interest

Mandell has argued that the public has an interest in "[u]nderstanding how DOJ has used a criminal defendant's own prior attorney in the course of an investigation and prosecution." (ECF No. 40 at p.3). Previously, Plaintiff alleged that the public had an interest in learning whether the government violated his attorney-client relationship in pursuit of his conviction. *See* ECF No. 33 at p. 3.[7] Plaintiff's more recent characterization of the public's interest purposefully omits an overt allegation of government wrongdoing in order to avoid Supreme Court case law requiring him to make an evidentiary showing of wrongdoing to warrant the disclosure of information that is otherwise subject to FOIA's privacy exemptions. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Regardless of how Mandell defines the public interest at issue, Plaintiff has not—and cannot—show that disclosure of the information he seeks would further it. Plaintiff has offered no evidence to suggest that the government actually sought or received assistance, or otherwise "used" his former attorney, Steven Altman, in Mandell's criminal case. The reality is, as

---

[6]Plaintiff additionally has argued that Altman does not enjoy a right to privacy because any cooperation between Altman and the government was a violation of the ABA Model Rules of Professional Conduct. As explained above, Altman did not cooperate with the government in Plaintiff's criminal prosecution. Regardless, to the extent that Altman ran afoul of any of his professional responsibilities, FOIA is not a vehicle for the regulation or discipline of private attorneys, but one by which the public can inform itself of the *government's* conduct. "Whether the public interest in disclosure warrants the invasion of personal privacy is determined by the degree to which disclosure would further the core purpose of FOIA, which focuses on 'the citizens' right to be informed about what their government is up to.'" *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 285 (2d Cir. 2009) (quoting *U.S. Dep't of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991)).

[7] Plaintiff has not abandoned this rationale for disclosure. He now presents it as an alternative upon which the Court could rule in his favor. On page 4 of his Post-Hearing memorandum (ECF No. 40), Plaintiff asserts that "[a] reasonable person would be justified in concluding, based on these facts, that the government "might" have obtained useful information from Mr. Altman, including confidential or privileged information or information that DOJ knew or should have known would violate ethical duties Mr. Altman owed to Plaintiff." (DE 40).

demonstrated above, that the government did not rely upon Altman in its prosecution of Mandell. It did not meet with Altman or intend to call him as a witness. Thus, even without questioning the public's interest in knowing DOJ's policies regarding a defendant's former attorney's involvement in a criminal prosecution, Plaintiff has failed to show that disclosure of the records he is seeking in this case would in any way advance that interest. *See Favish*, 541 U.S. 157, 172 (2004) (to overcome FOIA's privacy exemptions, in addition to identifying a significant public interest, a FOIA requester must "show the information is likely to advance that interest").

Of course, the Court need not blind itself to the actual public interest Plaintiff has asserted – the exposure of alleged government wrongdoing. Plaintiff has consistently expressed his suspicion that the government violated his attorney-client relationship with Altman in order to secure his conviction. The Supreme Court has stated that "where ... the public interest being asserted is to show that responsible officials acted . . . improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *Favish,* 541 U.S. at 174. Rather, the plaintiff must make a "meaningful evidentiary showing" that the public interest would be served by disclosure. *Id.* at 175, 124 S.Ct. 1570. The Supreme Court in *Favish* explained that such a showing is made with "particular . . . evidence [that] points with credibility to some actual misfeasance or other impropriety." *Id*. at 173. Plaintiff here has tendered no evidence whatsoever that the government sought or obtained any information from his alleged former attorney in the course of investigating or prosecuting him, let alone evidence that it did so unlawfully or improperly.[8] As demonstrated above, Plaintiff's "evidence" consists of his own misrepresentations regarding the government's conduct in the criminal case and a list of "Names" that Plaintiff bogusly tries to pass off as a copy of the governments' witness list. Plaintiff has patently failed to meet his burden under *Favish* and, thus, failed to overcome FOIA's privacy exemptions, 5 U.S.C. § § (b)(6) and (b)(7)(C).

---

[8] Although it is purely an academic question given that Altman did not, in fact, cooperate with the government's case against Mandell, Mandell is incorrect in assuming that his relationship with Altman was protected by the attorney-client privilege. During her summation of the evidence against Mandell, the prosecutor, Ms. Goldstein, indicated that Altman assisted in Mandell in an effort to "hide the fraud from the outside world." *U.S. v. Mandell,* ECF No. 09-cr-662, ECF No. 317, at ECF p. 77. It is well-established that the attorney-client privilege does apply to conduct in furtherance of a crime or fraud. *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir.1987).

### VI. Plaintiff Presents No Sufficient Reason for Disclosure Independent of Alleged Impropriety

Mandell recognizes that he has no evidence of wrongdoing on the government's part. Therefore, he has alternatively argued that the D.C. Circuit's decision in *Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) ("*CREW*") relieves him of *Favish*'s requirement of producing evidence of wrongdoing to warrant disclosure of the records he seeks. (DE 40 at p.3). The D.C. Circuit in *CREW* held that the public's interest in "matters of substantive law enforcement policy" was significant enough to overcome a third party's privacy interest in the records sought, even though the requestor had not alleged that the government had engaged in any wrongdoing. The public interest at issue in *CREW*, however, was vastly different than the one proffered by Mandell here. Mandell's request here does not involve a matter of substantive law enforcement policy, but an allegation of prosecutorial misconduct. *CREW*, 746 F.3d at 1095 (citations omitted).

In *CREW*, the plaintiff had requested records related to the FBI's investigation of former Majority Leader of the United States House of Representatives Tom DeLay on suspicion of public corruption. The FBI had categorically denied the request pursuant to FOIA exemption 7(C), which applies to records compiled for law enforcement privileges the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. *See* 5 U.S.C. § 552(b)(7)(C). The district court affirmed the FBI's determination that DeLay's privacy interests exceeded any public interest in the disclosure of the information regarding the FBI's investigation. The Circuit Court disagreed. It found that DeLay's privacy interest was diminished by the fact that he had himself disclosed the fact of the investigation and because he was a public official with less of an expectation of privacy. Nevertheless, the Circuit Court found that DeLay still had an interest in keeping private the *contents* of the investigative files.

The Circuit Court balanced De Lay's privacy interest in the contents of the investigative files against the public's interest in knowing "how the FBI and the DOJ carried out their respective statutory duties to investigate and prosecute criminal conduct." *Id.* at 1093. The court recognized that the requestor in *CREW* alleged no wrongdoing and therefore did not require it to provide evidence of government wrongdoing to overcome DeLay's privacy interest. *See id.* at 1094-95. It did, however, require that the requester "establish[] a sufficient reason for disclosure independent of any impropriety." *Id.* To this end, the requestor in *CREW* asserted, and the court

agreed, that the public had a significant interest in knowing how the FBI and DOJ handle the investigation and prosecution of public corruption at the highest levels of the federal government. *Id*. at 1093. As for whether the information requested would further the public interest, the court also found that disclosure "would likely reveal much about the diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches." *Id*. at 1093.

In contrast to the requestor in *CREW*, Plaintiff here has not identified a similar public interest akin to how government is handling the investigation and prosecution of a member of congress suspected of public corruption. Plaintiff's asserted public interest, i.e, the public's interest in how DOJ may "use" a criminal defendant's former attorney, is not "a matter of substantive law enforcement policy" as in *CREW*. Nor has Plaintiff demonstrated that Altman's right to privacy is diminished like that of Congressman Tom DeLay. In view of the reality concerning Altman's lack of involvement in the government's prosecution of Plaintiff (and the fact that disclosure of records would reveal nothing about how the government engages a defendant's former attorneys), the Court need not engage in a balancing of the public's interests versus Steven Altman's privacy interests. Nevertheless, if such a balancing test were necessary, Plaintiff has failed to demonstrate how the public's interest in such information exceeds Altman's right to keeping the records responsive to Plaintiff's broad request private.

## **CONCLUSION**

For the reasons provided above and previously in this action, the Court should overrule Mandell's objections to the Honorable U.S. Magistrate Judge Otazo-Reyes' Report and Recommendation. Defendant respectfully submits that it is entitled to summary judgment in its favor.

Dated: March 9, 2020
Miami, Florida

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:     /s/ Carlos Raurell

Carlos Raurell<br>
Assistant United States Attorney<br>
Florida Bar No. 529893<br>
Carlos.Raurell@usdoj.gov<br>
United States Attorney's Office<br>
99 NE 4th Avenue, Suite 300<br>
Miami, Florida 33132<br>
Telephone: (305) 961-9243<br>
Facsimile: (305) 530-7139<br>
Attorneys for the Defendants

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 9, 2020, I filed the foregoing document with the Clerk of the Court, using the CM/ECF system.

        /s/ Carlos Raurell
        CARLOS RAURELL
        Assistant United States Attorney